IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CHICAGO & VICINITY LABORERS' DISTRICT COUNCIL PENSION FUND, CHICAGO & VICINITY LABORERS' DISTRICT COUNCIL WELFARE FUND, CHICAGO & VICINITY LABORERS' DISTRICT COUNCIL RETIREE HEALTH AND WELFARE FUND, and CATHERINE WENSKUS, not individually but as Administrator of the Funds,<br>          Plaintiffs,<br><br>v.<br><br>PATCHING PEOPLE, INC., an Illinois corporation,<br>          Defendant. | Case no.<br><br>Judge: |

## COMPLAINT

Plaintiffs, Chicago & Vicinity Laborers' District Council Pension Fund, Chicago & Vicinity Laborers' District Council Health & Welfare Fund, Chicago & Vicinity Laborers' District Council Retiree Health & Welfare Fund, and Catherine Wenskus, not individually but as Administrator of the Funds, (collectively the "Funds"), by their attorneys Patrick T. Wallace, Amy N. Carollo, G. Ryan Liska, Katherine C.V. Mosenson and Sara S. Schumann, and for their Complaint against Patching People, Inc., state as follows:

## COUNT I

**(Failure to Pay Benefit Contributions Revealed As Delinquent Pursuant to an Audit)**

1. Jurisdiction is based on Sections 502(e)(1) and (2) and 515 of the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. §§1132 (e)(1) and (2) and 1145, Section 301(a) of the Labor Management Relations Act ("LMRA") of 1947 as amended, 29 U.S.C. §185(a), 28 U.S.C. §1331, and federal common law.

2. Venue is proper pursuant to Section 502(e)(2) of ERISA, 29 U.S.C. §1132(e)(2), and 28 U.S.C. §1391 (a) and (b).

3. The Funds are multiemployer benefit plans within the meanings of Sections 3(3) and 3(37) of ERISA. 29 U.S.C. §1002(3) and 37(A). They are established and maintained pursuant to their respective Agreements and Declarations of Trust in accordance with Section 302(c)(5) of the LMRA. 29 U.S.C. § 186(c)(5). The Funds have offices and conduct business within this District.

4. Plaintiff Catherine Wenskus ("Wenskus") is the Administrator of the Funds, and has been duly authorized by the Funds' Trustees to act on behalf of the Funds in the collection of employer contributions owed to the Funds and to the Construction and General District Council of Chicago and Vicinity Training Fund, and with respect to the collection by the Funds of amounts which have been or are required to be withheld from the wages of employees in payment of Union dues for transmittal to the Construction and General Laborers' District Council of Chicago and Vicinity (the "Union"). With respect to such matters, Wenskus is a fiduciary of the Funds within the meaning of Section 3(21)(A) of ERISA, 29 U.S.C. §1002(21)(A).

5. Defendant Patching People, Inc. (hereinafter "Company"), is an Illinois corporation. Company does business within this District, and was at all times relevant herein an employer within the meaning of Section 3(5) of ERISA, 29 U.S.C. §1002(5), and Section 301(a) of the LMRA, 29 U.S.C. §185(c).

6. The Union is a labor organization within the meaning of 29 U.S.C. §185(a). The Union and the Company have been parties to successive collective bargaining agreements ("Long forms"), at least since January 1, 1992. Some copies of the Company's Assignment of

Collective Bargaining Rights executed by Company, which adopt and incorporate the Master Agreements between the Union and various employer associations, and also bind the Company to the Funds' respective Agreements and Declarations of Trust, are attached hereto as Exhibit A-1, and a copy of a governing Master Agreement, the Illinois Small Pavers Agreement ("ISPA"), is also attached hereto as Exhibit A-2. The Company's Long Form and the Master Agreements are collectively referred to as the Agreement.

7. The Funds have been duly authorized to serve as collection agents for the Union in that the Funds have been given the authority to collect from employers union dues which should have been or have been deducted from the wages of covered employees. Further, the Funds have been duly authorized by the Construction and General Laborers' District Council of Chicago and Vicinity Training Fund ("Training Fund"), the Midwest Construction Industry Advancement Fund ("MCIAF"), the Mid-American Regional Bargaining Association Industry Advancement Fund ("MARBA"), the Chicagoland Construction Safety Council ("Safety Fund"), the Laborers' Employers' Cooperation and Education Trust ("LECET"), the Concrete Contractors Association ("CCA"), the CDCNI/CAWCC Contractors' Industry Advancement Fund ("Wall & Ceiling Fund"), the CISCO Uniform Drug/Alcohol Abuse Program ("CISCO"), the Laborers' District Council Labor Management Committee Cooperative ("LDCLMCC"), the Will Grundy Industry Trust Advancement Fund ("WGITA"), the Illinois Environmental Contractors Association Industry Education Fund ("IECA Fund"), the Illinois Small Pavers Association Fund ("ISPA"), and the Chicago Area Independent Construction Association ("CAICA") to act as an agent in the collection of contributions due to those Funds.

8. The Agreement and the Funds' respective Agreements and Declarations of Trust obligate the Company to make contributions on behalf of its employees covered by the

3

Agreement for pension benefits, health and welfare benefits, and for the training, LECET, LDLMCC and ISPA funds and to submit monthly remittance reports in which Company, *inter alia*, identifies the employees covered under the Agreement and the amount of contributions to be remitted to the Funds on behalf of each covered employee. Pursuant to the terms of the Agreement and the Funds' respective Agreements and Declarations of Trust, any contributions which are submitted untimely are assessed up to twenty percent liquidated damages, plus interest.

9. The Agreement obligates Company to obtain and maintain a surety bond to insure future wages, pension and welfare contributions.

10. The Agreement and the Funds' respective Agreements and Declarations of Trust require Company to submit its books and records to the Funds on demand for an audit to determine benefit contribution compliance.

11. The Funds did select the independent auditing firm of Calibre CPA Group, PLLC to conduct a compliance audit of the Company for the period covering April 1, 2015 through June 30, 2018 (the "Calilbre Audit"). On April 9, 2020, the Calibre Audit report issued, reflecting amounts were owed by the Company to the Funds, and on April 22, 2020 a copy of the Calibre Audit was sent to Company for its review with a May 15, 2020 deadline to raise written objections (if any) with any supporting evidence, or to provide payment of all amounts found owed to the Funds per the Calibre Audit.

12. Company did raise challenges with some supporting evidence, which were reviewed and some were found acceptable, so the Calibre Audit was revised accordingly, and reissued on August 11, 2020, with a copy sent for Company's review and a September 8, 2020

4

deadline for responding with payment of all amounts found owed, or to present additional evidence to challenge the revised Calibre Audit's findings (See Exhibit B, Letter 8.11.2020).

13. On September 9, 2020, Company's counsel contacted the undersigned to request a seven day extension to issue Company's response and such extension was granted. On September 15, Company counsel asked for further extension to Friday, September 18, which was again granted via email. Thereafter, Company's counsel failed to respond, and the undersigned sent emails on September 21 and 24, requesting whether further extension was needed, or when to expect Company's response or full payment. On September 24, the undersigned was informed the Company was not responding to its counsel's recommendation. The undersigned granted a further extension to September 30, 2020, requesting a response by that date. No response, nor payment of the amounts owed, nor further request for extension was received.

14. The Calibre Audit of Company's books and records for the time period of April 1, 2015 through June 30, 2018 revealed that Company performed covered work during the audit period, and notwithstanding the obligations imposed by the Agreement, and the Funds' respective Agreements and Declarations of Trust, Company has:

(a) failed to report and pay contributions in the amount of $17,559.36 to Plaintiff Chicago & Vicinity Laborers' Pension Fund for the audit period of April 1, 2015 to June 30, 2018, thereby depriving the Laborers' Pension Fund of contributions, income and information needed to administer the Fund and jeopardizing the pension benefits of the participants and beneficiaries;

(b) failed to report and pay contributions in the amount of $16,647.24 to Plaintiff Chicago & Vicinity Laborers' Welfare Fund for the audit period of April 1, 2015 to June 30, 2018, thereby depriving the Welfare Fund of contributions, income and information needed to

administer the Fund and jeopardizing the health and welfare benefits of the participants and beneficiaries;

(c) failed to report and pay contributions in the amount of $6,552.00 to the Laborers' District Council's Retiree Health and Welfare Fund for the audit period of April 1, 2015 to June 30, 2018, thereby depriving the Retiree Welfare Fund of contributions, income and information needed to administer the Fund and jeopardizing the health and welfare benefits of the participants and beneficiaries;

(d) failed to report and pay contributions in the amount of $819.00 to Laborers' Training Fund for the audit period of April 1, 2015 to June 30, 2018, thereby depriving the Laborers' Training Fund of contributions, income and information needed to administer the Fund and jeopardizing the training fund benefits of the participants and beneficiaries;

(e) failed to report and pay contributions in the amount of $278.46 owed to Laborers' District Council Labor Management Committee Cooperative ("LDCLMCC") for the audit period of April 1, 2015 through June 30, 2018, thereby depriving the LDCLMCC of contributions, income and information needed to administer the Fund and jeopardizing the benefits of the participants and beneficiaries;

(f) failed to report and pay contributions in the amount of $131.04 owed to Illinois Small Pavers Association ("ISPA") for the audit period of April 1, 2015 through June 30, 2018, thereby depriving the ISPA of contributions, income and information needed to administer the Fund and jeopardizing the benefits of the participants and beneficiaries; and

(g) failed to report and pay contributions in the amount of $114.66 owed to Laborers' Employers' Cooperation and Education Trust ("LECET") for the audit of April 1, 2015 through June 30, 2018, thereby depriving the LECET of contributions, income and information needed to

administer the Fund and jeopardizing the benefits of the participants and beneficiaries.

 (h) failed to obtain and maintain a surety bond.

A true and accurate copy of the audit and audit summary sheet are attached hereto as Exhibits C.

 15. Under the terms of the Agreement and the Funds' respective Agreements and Declarations of Trust, Company owes $8,307.94 in liquidated damages plus $25,757.91 in accumulated interest for all unpaid contributions revealed by the Calibre Audit for the period of April 1, 2015 through June 30, 2018 (See Exhibit C).

 16. Under the terms of the Agreement and the Funds' respective Agreements and Declarations of Trust, Company is liable for the costs of any audit which reveals unpaid contributions or requires the Funds to file litigation to gain the Company's compliance. Accordingly, Company owes $1,735.00 to the Funds for the Calibre Audit costs for the audit of the period, covering April 1, 2015 through June 30, 2018 (See Exhibit C).

 17. Company's actions in failing to submit payment upon the audit to which it submitted its books and records violate Section 515 of ERISA, 29 U.S.C. §1145.

 18. Pursuant to Section 502(g)(2) of ERISA, 29 U.S.C. §1132 (g)(2), Section 301 of the LMRA, 29 U.S.C. §185, the terms of the Agreement and the Funds' respective Trust Agreements, Company is liable to the Funds for unpaid contributions, as well as interest and liquidated damages on the unpaid contributions, accumulated liquidated damages, audit costs, and reasonable attorneys' fees and costs, and such other legal and equitable relief as the Court deems appropriate.

 19. The Company's actions in failing to report and pay timely the contributions owed per the Calibre Audit, and failing to obtain and maintain a bond violate Section 515 of ERISA,

29 U.S.C. §1145, and Section 301 of the LMRA. 29 U.S.C. §185 and federal common law interpreting ERISA, 29 U.S.C. §1132 (g)(2).

WHEREFORE, Plaintiffs respectfully request this Court enter a judgment against Defendant Patching People, Inc., as follows:

a. entering judgment in the Funds' favor and in sum certain against Defendant Company on the amounts found due and owing pursuant to the Calibre Audit, interest, liquidated damages, audit costs, and attorneys' fees and costs;

b. ordering Defendant Company to obtain and maintain a surety bond in accord with the collective bargaining agreement; and

c. awarding Plaintiffs any further legal and equitable relief as the Court deems appropriate.

                                              Respectfully Submitted,

October 7, 2020                  Chicago & Vicinity Laborers' Pension Fund, et al.,

                                              By: /s/ Sara S. Schumann

Sara S. Schumann  
Laborers' Pension and Welfare Funds  
Office of Fund Counsel  
111 W. Jackson, Suite 1415  
Chicago, IL 60604  
SaraS@chilpwf.com  
(773) 255-9878